IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **ELIZABETH WYLIE**, <br><br> Plaintiff <br><br> vs. <br><br> **SOCIAL BICYCLES LLC D/B/A JUMP BIKES** <br><br> Defendant | **NO. 5:20-CV-1328** |

# ORIGINAL COMPLAINT

Plaintiff Elizabeth Wylie files this Original Complaint against Defendant Social Bicycles LLC d/b/a JUMP Bikes.

# PARTIES

1.1. Plaintiff Elizabeth Wylie resides in Chicago, Illinois.

1.2. Defendant, Social Bicycles LLC d/b/a JUMP Bikes ("JUMP") owns and makes a fleet of GPS-enabled electric scooters that riders can locate on their smartphones, rent for short periods of time, and use to complete short trips that might otherwise occur in a car. JUMP is an LLC incorporated in the State of Delaware with its principal place of business in New York. Its sole member, SMB Holding Corporation, is a Delaware corporation with its principal place of business in California. JUMP may be served with process

through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

2.1. This Court has subject-matter jurisdiction because of diversity of citizenship between Plaintiff and Defendant. Further, the amount of controversy in this lawsuit is greater than $75,000. *See* 28 U.S.C. § 1332.

2.2. This Court has personal jurisdiction over JUMP because, *inter alia*, JUMP has specifically availed itself of the laws of the State of Texas by selecting San Antonio as one of only twelve U.S. cities in which to implement its scooter sharing services, JUMP has transacted business in this district and has sufficient minimum contacts within the forum as a result of its business conducted within the State of Texas, and this case arises out of an accident involving Defendant's electric scooter that occurred in San Antonio, Texas. On information and belief, JUMP maintains a physical presence in Texas and this District through the presence of various employees specifically employed to facilitate JUMP's business activities in this District, including but not limited to technicians dedicated to the maintenance of JUMP scooters and bikes.

2.3. A substantial part of the events or omissions giving rise to this lawsuit occurred in this judicial district. Under 29 U.S.C. § 1391(b)(2), venue is proper in the District Court for the Western District of Texas.

## FACTS

3.1.   JUMP provides electric scooters and pedal-assist bicycles which are made available for short-term, usually one-way, rentals. Over the past several years, JUMP has significantly expanded its scooters systems around the country. The advance of the internet—and the smartphone in particular—have made it far easier to offer JUMP's electric scooters on a large scale in urban environments. Internet applications enable users to monitor the availability of nearby scooters using GPS and to unlock access to and pay for those bikes directly from their smartphone. And recently, JUMP advanced in other ways, such as through the advent of "dockless" bikes and scooters that, unlike traditional "docked" systems, are not tethered to fixed docking stations.

3.2.   JUMP introduced scooters to the downtown San Antonio, Texas area. Elizabeth Wylie was an experienced electric scooter rider. She had done so on numerous prior occasions.

3.3.   On January 29, 2019, Ms. Wylie was in San Antonio, Texas on business.  She was riding a JUMP electric scooter in downtown San Antonio. Plaintiff was riding the subject JUMP scooter in a manner consistent with its marketed and intended use, and consistent with the marketed, intended, and reasonably foreseeable purpose of the scooter.

3.4.   While riding the subject JUMP electric scooter, the scooter unexpectedly failed. As Ms. Wylie approached a curb, the brakes on her scooter suddenly failed. Without the use of her brakes, she was forced into the curb and was thrown over the scooter onto the curb. After flying over the subject scooter, Ms. Wylie landed on her head, cracked multiple teeth, lacerated her chin, and suffered significant injuries to her neck, shoulders, arms, and hands.

The scooter's malfunction led to numerous medical and dental appointments, imaging studies, and rehabilitation and therapy sessions.

3.5. A CT scan imaging performed the month after revealed multiple disc bulges, some of which had herniation. Following the accident, Ms. Wylie developed central cord syndrome. She could not life her arms above her shoulders. She experiences constant numbness or pain in her hands and arms. Further, she continues to experience significant pain in her jaw.

## LIABILITY

### A. *Negligence*

4.1. At all times material to this suit, JUMP was engaged in the business of renting a product—electric scooters—to the public at large for the intended purpose of use as a means of transportation and commuting in urban environments. Defendant's business included the advertising, promoting, marketing, inspecting, repairing, recharging, supplying and distributing JUMP electronic scooters for use by the general public. At all times herein, Defendant owned, leased, or were otherwise entrusted with the scooter that injured Plaintiff.

4.2. Defendant was negligent in one or more of the following respects:

(a) Failing to adequately test, inspect, repair, and/or service the JUMP scooter before offering it for use by the general public;

(b) Failing to equip the scooter with a brake system that was sufficient to properly stop the scooter;

    (c)    Failing to properly maintain the scooter to ensure it was equipped with proper brakes;

    (d)    Failing to warn Plaintiff about the scooter's inability to brake properly;

    (e)    Failing to warn Plaintiff about the scooter's lack of brakes; and,

    (f)    Failing to remove the subject JUMP scooter for use by the general public.

4.3.    Such negligence was a proximate cause of Plaintiff's injuries and damages.

## B. *Strict Liability*

### i. **Design and/or Manufacturing Defect**

4.4.    The braking components for the subject scooter were defectively designed and/or manufactured.

4.5.    The design and/or manufacturing defects existed in the scooter when it left the possession of Defendant and these defects rendered the scooter unreasonably dangerous.

4.6.    A safer alternative design existed for this scooter which was economically or technologically feasible and which would have prevented or reduced the risk of Plaintiff's injuries, without substantially impairing the product's utility. There was only a nominal, if any, additional cost in using an alternative safer design and the alternative design had no disadvantages.

4.7.    The design and/or manufacturing defects were a producing cause of Plaintiff's injuries and damages.

      ii.    **Marketing Defect**

4.8.    Plaintiff further alleges that the scooter was defectively marketed because Defendant failed to provide adequately warnings or instructions concerning the use and operation of the scooter.

4.9.    Such marketing defect was a producing cause of Plaintiff's injuries and damages.

### C. *Breach of Warranty of Fitness for a Particular Purpose*

4.10.    The scooter did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable manner. The scooter's failure to perform safely was a breach of a warranty of fitness for a particular purpose.

4.11.    Such breach of warranty was a proximate and/or producing cause of Plaintiff's injuries and damages.

## DAMAGES

5.1.    Plaintiff Elizabeth Wylie seeks recovery of the following past and future damages:

    (a)    Medical expenses;

    (b)    Lost wages and earning capacity;

    (c)    Physical impairment;

    (d)    Physical pain and mental anguish; and

    (e)    Disfigurement.

5.2. Plaintiff also seeks recovery of all pre- and post-judgment interest allowed under applicable law.

## JURY DEMAND

6.1. Plaintiff Elizabeth Wylie demands a trial by jury.

## PRAYER

7.1. Plaintiff prays that Defendant be cited to appear and answer herein, and that upon final trial, that Plaintiff have judgment against Defendant for her compensatory damages, for pre- and post-judgment interest at the applicable legal rate; for all Court costs incurred in this litigation; and for such other relief to which Plaintiff may be entitled.

Respectfully Submitted,

/s/ Jamal K. Alsaffar
**JAMAL K. ALSAFFAR**,
   jalsaffar@nationaltriallaw.com
   Texas State Bar #2402719
**EUGENE W. BREES**,
   cbrees@nationaltriallaw.com
   Texas State Bar #02947500
**STEVEN HASPEL**,
   shaspel@nationaltriallaw.com
   Texas State Bar #24109981
**WHITEHURST, HARKNESS, BREES, CHENG, ALSAFFAR, HIGGINBOTHAM, & JACOB P.L.L.C.**
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735
(512) 476-4346 (o)
(512) 467-4400 (f)

Attorneys for Plaintiff